IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Phillip Jimmie Miller, | ) | Civil Action No.:2:14-cv-2754-MGL-MGB |
| | ) | |
| Petitioner, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| v. | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| Joseph McFadden, *Warden of Lieber* | ) | |
| *Correctional Institution*, | ) | |
| | ) | |
| Respondent. | ) | |

The Petitioner, a state prisoner, seeks habeas relief pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Respondent's Motion for Summary Judgment. (Dkt. No. 14; see also Dkt. No. 13.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review the instant petition for relief and submit findings and recommendations to the District Court.

The Petitioner, through counsel, brought this habeas action on July 8, 2014. (Dkt. No. 1.) On October 31, 2014, Respondent filed a Motion for Summary Judgment. (Dkt. No. 14; see also Dkt. No. 13.) Petitioner filed a Response in Opposition to the Motion for Summary Judgment, to which Respondent filed a Reply. (See Dkt. No. 22; Dkt. No. 23.)

**PROCEDURAL HISTORY**

The Petitioner is currently confined within the South Carolina Department of Corrections ("SCDC"). In May of 2003, the Beaufort County Grand Jury indicted Petitioner for murder. (R. at 437-38.) Petitioner was represented at trial by Gene Hood, Esquire. (See R. at 1.) Petitioner proceeded to a jury trial before the Honorable A. Victor Rawl on July 26-28 of 2004. (See R. at 1-338.) The jury convicted Petitioner as charged, and Judge Rawl sentenced Petitioner to thirty years of imprisonment. (R. at 337.) Petitioner filed a motion for a new trial, and Judge Rawl denied that motion on January 20, 2005 after a hearing. (See R. at 339-62.)

Petitioner appealed and was represented by Robert M. Dudek, Esquire, of the South Carolina Commission on Indigent Defense. (See Dkt. No. 13-7.) In his Final Brief of Appellant filed on December 5, 2006, Petitioner raised the following issue:

> Whether the court erred by not instructing the jury on the law of voluntary manslaughter where it was undisputed there was evidence of voluntary manslaughter since there was testimony the decedent punched appellant and was attempting to pull him out of the automobile at the time appellant shot him?

(Dkt. No. 13-7 at 4 of 14.) In an unpublished opinion filed on May 24, 2007, the South Carolina Court of Appeals affirmed the judgment of the trial court. (Dkt. No. 13-9.) The remittitur was issued on June 11, 2007. (Dkt. No. 13-10.)

Petitioner filed an application for post-conviction relief ("PCR") on June 2, 2008. (R. at 363-70.) The following questions and answers appeared in his PCR application (verbatim):

> 10. State concisely the grounds on which you base your allegation that you are being held in custody unlawfully:
>
> > (a) Ineffective assistance of counsel
> >
> > (b) Juror misconduct
> >
> > (c) Judicial misconduct
>
> 11. State concisely and in the same order the facts which support each of the grounds set out in (10):
>
> > (a) My trial counsel was ineffective by not requesting a charge of voluntary manslaughter to the judge. The evidence presented plainly showed that I was entitled to a lesser included offense. Had one been charged, I would have been subjected to a smaller sentencing window.
> >
> > (b) Juror 99 . . . failed to disclose the facts that two of the victim's sisters worked for him. He also know my stepfather and an ex-girlfriend of mine was employed for him also. He had a conversation with this aforementioned ex-girlfriend less than twenty-four hours before he was selected as a juror. Applicant has affidavits to prove the same. This affected the aforementioned juror's ability to be fair and impartial.

2

> (c) The court was in error by not charging a lesser included offense
> of manslaughter to the jury. The law to be charged must be
> determined by the evidence presented at trial. My trial contained
> undisputed evidence of voluntary manslaughter but the court
> refused to grant me the entitled charge. This subjected applicant to
> a larger sentencing window than had voluntary manslaughter been
> charged.

(R. at 365-66.)[1]

On April 5, 2010, an evidentiary hearing was held before the Honorable Perry M.

Buckner. (R. at 377-428.) Petitioner was present and represented by Diane DeWitt, Esquire. (See

R. at 377.) In an order dated April 28, 2010, Judge Buckner denied the application for post-

conviction relief and dismissed the petition. (R. at 429-36.)

Petitioner, through his attorney Robert M. Pachak of the South Carolina Commission on

Indigent Defense, filed a Johnson Petition for Writ of Certiorari on October 15, 2010. (See Dkt.

No. 13-12.)[2] Through counsel, Petitioner raised the following issue:

> Whether defense counsel was ineffective in failing to request a jury charge on the
> lesser included offense of voluntary manslaughter when there was evidence to
> support the charge?

(Dkt. No. 13-12 at 3 of 9.) Mr. Pachak also filed a petition to be relieved as counsel. (Dkt. No.

13-12 at 8 of 9.) Petitioner filed a *pro se* response to the Johnson petition, wherein he raised the

following issues (verbatim):

> (I) The Court, as well as defense counsel, erred by not instructing and/or
> requesting to the jury a lesser included offense of voluntary manslaughter. . . .
>
> (II) The prosecutor erred by making false statements. . . .
>
> (III) Petitioner seeks retroactive application of the Belcher law. . . .
>
> (IV) Petitioner has evidence of juror misconduct. . . .

---

[1] The PCR court also addressed the following claim: "[i]neffective assistance of counsel in that counsel made an improper comment during closing argument." (R. at 430.)

[2] See Johnson v. State, 294 S.C. 310, 364 S.E.2d 201 (1988).

3

(Dkt. No. 13-13 at 1-3 of 41.)

In an order filed July 8, 2013, the South Carolina Court of Appeals denied the petition for a writ of certiorari and granted counsel's request to withdraw. (Dkt. No. 13-14.) The matter was remitted to the lower court on July 29, 2013. (Dkt. No. 13-15.)

Petitioner, through counsel, filed the instant habeas petition on July 8, 2014. (See Dkt. No. 1.) Therein, he raised the following grounds for review:

> **Ground One**: Petitioner was denied his constitutional right to have an impartial jury as a juror failed to disclose his personal and professional relationships with the victim's family and outside knowledge of the case.
> **Supporting Facts**: A juror had a personal and professional relationship with the victim's family. He was the employer of one of the victim's sisters. She was employed at his establishment at the time the incident occurred. The same juror also had a conversation with Petitioner's ex-girlfriend shortly before being selected as a juror regarding the case. The juror failed to disclose his relationship with the victim's family and did not disclose his outside knowledge of the case during voir dire.
>
> **Ground Two**: Petitioner was actually innocent of the offense of murder because the evidence was insufficient to establish that Petitioner committed the offense of murder.
> **Supporting Facts**: The alleged witnesses to the shooting all provided inconsistent statements during trial. The evidence presented actually implicated the witnesses in the shooting. Two of the witnesses tested positive for gunshot residue. There was no physical evidence linking Petitioner to the shooting. His fingerprints were not located at the scene and no weapon was found in his possession. Alternatively, there was testimony that Petitioner was assaulted at the time of the shooting warranting a not guilty by self-defense or, at most, a conviction for manslaughter.
>
> **Ground Three**: The trial court erred in failing to charge voluntary manslaughter and self-defense and trial counsel was constitutionally ineffective for failing to request these charges.
> **Supporting Facts**: Two witnesses testified that Petitioner was being assaulted at the time of the shooting. The trial court failed to charge the jury the lesser included offense of voluntary manslaughter because trial counsel requested that the trial court yield to his defensive strategy. Trial counsel improperly advised Petitioner that he should pursue an "all or nothing" strategy despite the testimony of three witnesses that Petitioner was the assailant. Trial counsel failed to request a charge on self-defense for similar reasons.
>
> **Ground Four**: The trial court erred when it charged that the use of a deadly weapon could infer malice, denying Petitioner due process.

**Supporting Facts**: The trial court charged the jury that malice could be inferred from the use of a deadly weapon despite testimony from witnesses that Petitioner was assaulted at the time of the shooting.

**Ground Five**: Petitioner was denied due process due to the prejudicial statements of trial counsel during closing statements.
**Supporting Facts**: There was no physical evidence implicating Petitioner. Petitioner's fingerprints were not located in the vehicle. Trial counsel stated during closing arguments that his fingerprints may not have been located at the scene because he was wearing gloves at the time of the incident.

(Dkt. No. 1 at 6, 8-9, 11, 13 of 18.)

## APPLICABLE LAW

**Summary Judgment Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

**Habeas Standard of Review**

Since the Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320, 322-23 (1997); Breard v. Pruett, 134 F.3d 615, 618 (4th Cir.1998).  Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

## **DISCUSSION**

As noted above, Respondent seeks summary judgment in the instant case. (See Dkt. No. 14; see also Dkt. No. 13.) Respondent contends he is entitled to summary judgment for many reasons; the court will address those arguments in turn. (See Dkt. No. 13.)

### **I**.    **Statute of Limitations**

Respondent first contends the instant action is barred by the statute of limitations. (See Dkt. No. 13 at 10-12.) Pursuant to the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214, a person "in custody pursuant to the judgment of a State court" and who seeks federal habeas relief is subject to a one-year statute of limitations. 28 U.S.C. § 2244(d)(1). The one-year period to file a § 2254 petition commences upon the latest of the following dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2244(d)(1)(A)-(D). The one-year period to file a § 2254 petition, however, is tolled during the time "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." Id. § 2244(d)(2).

Petitioner did not file the instant action within the one-year period of limitation set forth in § 2244(d). Petitioner was convicted on July 28, 2004, and his direct review concluded–at the latest–on June 11, 2007. (See R. at 328-32; Dkt. No. 13-10.) Petitioner filed his application for post-conviction relief on June 2, 2008. (R. at 363-70.) At that point, 357 days of non-tolled time had passed; Petitioner had a remaining eight days within which to timely file his federal habeas petition.

Because the statute of limitations was tolled while the application for post-conviction relief was pending, the statute was tolled from June 2, 2008, until–at the latest–July 29, 2013. See 28 U.S.C. § 2244(d)(2). Petitioner, through counsel, filed the instant habeas petition on July 8, 2014. (See Dkt. No. 1.) Three hundred and forty-four days elapsed between July 29, 2013, and July 8, 2014; Petitioner filed his habeas petition 336 days after the statute of limitations had run. His petition is, therefore, untimely.

Petitioner acknowledges that the instant petition is untimely. (See Dkt. No. 22 at 1.) He asserts, however, that he should receive the benefit of equitable tolling and that because he "has made a colorable showing of actual innocence," the untimeliness of his petition should be excused. (See id. at 2-6.)

### A. Equitable Tolling

The Supreme Court recognized that the limitations period may be equitably tolled if the petitioner shows (1) he has been diligently pursuing his rights and (2) some extraordinary circumstance stood in his way, preventing him from timely filing his habeas petition. Holland v. Florida, 560 U.S. 631, 649 (2010) (citing Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). However, "rarely will circumstances warrant equitable tolling. . . . " Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003).

Petitioner contends that he is entitled to equitable tolling because he has been pursuing his rights diligently, and "extraordinary circumstances have stood in the way of [him] being able to timely file his petition for habeas relief." (See Dkt. No. 22 at 3-5 of 20.) To show that he has been pursuing his rights diligently, Petitioner points to the fact that (a) on direct appeal, he filed a supplemental *pro se* appeal raising numerous issues, (see Dkt. No. 22-1), (b) Petitioner filed a timely application for post-conviction relief, and (c) Petitioner filed a *pro se* response to the Johnson petition. (See Dkt. No. 22 at 3-5 of 20.) To show that extraordinary circumstances stood in the way of him being able to timely file his § 2254 petition, Petitioner asserts (a) he has a learning disability in math; (b) he "dislocated his shoulder in February of 2013, and it took seven months for his arm to heal and the nerves to regain function; and (c) Petitioner "has no knowledge of the federal system and his family was raising funds so that he could afford to retain an attorney on his behalf." (Dkt. No. 22 at 5 of 20.)

Petitioner asserts that he believed, based on Mr. Pachak's letter, that he had one year after his post-conviction relief proceedings to timely file his federal habeas petition. (See Dkt. No. 1 at 1-2; Dkt. No. 1-2; Dkt. No. 1-3; Dkt. No. 1-4.) In addition to his own affidavit, Petitioner filed the affidavit of Inez Miller, his mother. (See Dkt. No. 1-3; Dkt. No. 1-2.) Ms. Miller states that in February of 2014, Petitioner sent her a list of attorneys' names and contact information so that

8

she could inquire as to whether they "would file a federal habeas corpus on his behalf and the amount it would cost." (Dkt. No. 1-3 at 3 of 6.) Ms. Miller further states (verbatim),

> Philip has a learning disability in math I was made aware of this when he was in high school. I attended several IEP meetings for him. Upon reading a letter sent by public defender Robert Dudek and Robert Pachak does not give an exact date for filing only the 1 year to file a habeas corpus understood by myself and my son Philip had I have known I would have started this process before July 2014.

(Id.) She also states that Petitioner has not had any telephone or visitation privileges, that Petitioner's "arm was not fully healed from being dislocated in February 2013," and that Petitioner was put on anxiety medication in 2013. (Id. at 3-4 of 6.) She said, "I really thought Philip had one year to file a habeas corpus from the date of post-conviction relief." (Id. at 4 of 6.) Ms. Miller attached some documents to her affidavit, one of which appears to be Petitioner's report card from the ninth grade. (See id. at 6 of 6.) The report card indicates that Petitioner did not do well in pre-algebra, but he did not do much better in other subjects either. (Id.)

While Petitioner and his mother may have misunderstood Mr. Pachak's letter, the letter itself was quite clear. (See Dkt. No. 1-4.) Mr. Pachak's letter, dated July 11, 2013, provided as follows:

> Dear Mr. Miller:
>
> Enclosed is a copy of the Order of the Court of Appeals denying our Petition for Writ of Certiorari, and granting the petition to be relieved. This means that you have now exhausted your state court remedies.
>
> There is now a **one-year statute of limitations for filing an application for a writ of habeas corpus in federal court**. However, please be aware that the time between your direct appeal becoming final, and the date your PCR application is filed **will count against your federal habeas statute of limitations in the future**. This statute of limitations is strictly enforced. I have enclosed a copy of the pertinent section of that statute for you to review. I am closing my file with this letter. Please understand that it is **your obligation alone** to ensure that a federal habeas application is timely filed if you want to continue challenging your conviction. Feel free to contact me if you have any questions, but writing to me **does not stay** the applicability of the statute of limitations. I do wish you the best in the future.

(Dkt. No. 1-4 at 2 of 2 (emphasis in original).)

In spite of Petitioner's attorneys' valiant efforts herein to obtain equitable tolling on behalf of Petitioner, the undersigned recommends concluding that Petitioner is not entitled to equitable tolling. Petitioner did file a timely application for post-conviction relief, and that application was considered on the merits in state court. He filed that application–*pro se*–on June 2, 2008. (R. at 363-70.) Given that Petitioner was able to timely file that application *pro se*, it is difficult to see how Petitioner's alleged learning disabilities prevented him from timely filing his federal habeas petition. From a review of Petitioner's filings, it appears that he began looking for an attorney to assist him in February of 2014, more than 170 days after the statute of limitations had run.[3] It is unclear when Petitioner actually was able to retain counsel to assist him, but he simply did not begin looking for counsel soon enough, apparently believing he had one year after his post-conviction relief proceedings concluded to timely file the instant petition. An incorrect belief as to the statute of limitations does not warrant equitable tolling. See United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004) ("[M]isconception about the operation of the statute of limitations is neither extraordinary nor a circumstance external to his control."). Petitioner's allegations simply do not warrant equitable tolling. See id. at 513 ("As a general matter, the federal courts will apply equitable tolling because of a petitioner's mental condition only in cases of profound mental incapacity." (citation omitted)); Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000) ("Harris argues that equitable considerations justify tolling in his case because the missed deadline was the result of an innocent misreading of the statutory provision by his counsel. While we agree that the mistake by Harris' counsel appears to have been innocent, we cannot say that the lawyer's mistake in interpreting a statutory provision constitutes that

---

[3]Petitioner's post-conviction relief application was remitted to the lower court on July 29, 2013. To be timely, then, Petitioner's § 2254 petition had to be filed by August 6, 2013. One hundred and seventy nine days passed between August 6, 2013, and February 1, 2014.

'extraordinary circumstance' external to Harris that would justify equitable tolling."); <u>Dodd v. United States</u>, 365 F.3d 1273, 1283 (11th Cir. 2004) ("[L]ockdowns and periods in which a prisoner is separated from his legal papers are not 'extraordinary circumstances' in which equitable tolling is appropriate."); <u>Burns v. Beck</u>, 349 F. Supp. 2d 971, 974 (M.D.N.C. 2004) ("[U]nfamiliarity with the legal process, lack of representation, or illiteracy does not constitute grounds for equitable tolling. Likewise, mistake of counsel does not serve as a ground for equitable tolling. Nor are prison conditions, such as lockdowns or misplacement of legal papers, normally grounds for equitable tolling." (citations omitted)); <u>cf. Parmaei v. Jackson</u>, 378 F. App'x 331, 332 (4th Cir. 2010) ("[W]e conclude that equity should operate to allow [the petitioner] to pursue on § 2254 those claims that, but for the clerk's docketing failure, would have been timely before the district court."). Petitioner has not shown that extraordinary circumstances beyond his control prevented him from timely filing his federal habeas petition. The undersigned therefore recommends concluding that Petitioner is not entitled to equitable tolling.

**B. Actual Innocence**

The Supreme Court has also held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass" to bring a habeas petition after the statute of limitations has expired. <u>McQuiggin v. Perkins</u>, 133 S. Ct. 1924, 1928 (2013). As stated in <u>McQuiggin</u>, however, "tenable actual-innocence gateway pleas are rare." <u>Id</u>. "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." <u>Schlup v. Delo</u>, 513 U.S. 298, 329 (1995). "To be credible," a claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." <u>Id</u>. at 324. The <u>Schlup</u> standard is a "demanding" one:

11

A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.

House v. Bell, 547 U.S. 518, 538 (2006) (citing Schlup, 513 U.S. 298).

In his Response in Opposition, Petitioner asserts that he has made a showing that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." (Dkt. No. 22 at 10.) Petitioner states,

First, there was no physical evidence linking Miller to the crime. Miller's fingerprints were not found at the scene and the weapon was never recovered. In fact, evidence found at the scene pointed to Sloan and Byas as the possible perpetrators as they both tested positive for gunshot residue. (App. 265.) Additionally, as Miller argued in his petition for habeas relief, the testimony of the three witnesses to the shooting, Maurice Jacques, Enrique Sloan and Brandon Byas, were all inconsistent with one another. However, even if the jury found the State's witnesses reliable, Sloan and Byas both agreed that Miller was attacked by Aiken prior to the shooting. (App. 182, 214.) Sloan testified that Aiken struck Petitioner "hard" and attempted to pull Petitioner out of the vehicle prior to the shooting. (App. 182.) Byas also testified that Aiken punched Petitioner. (App. 214.)

As argued in his petition for habeas relief, the evidence only shows that Petitioner was defending himself against Aiken's attack. There is no evidence that Petitioner sought out Aiken. To the contrary, the evidence shows that it was Aiken who confronted and attacked Petitioner. This shows a lack of malice and the presence of justification. Respondent relies on the statements that Miller allegedly made following the shooting to Sloan in an attempt to establish lack of justification: "I didn't mean–he did a hit" and "I was stupid." (App. 184-85.) (Resp't. Return 53.) However, Respondent takes these statements out of context. According to Sloan, Miller stated that Aiken attacked him and because Aiken attacked him, Miller reacted and shot him. Miller had the right to defend himself against Aiken. In terms of the "I am stupid" statement, there is no evidence that Sloan meant Miller was talking about himself. An equal likelihood was that he called Sloan stupid because Miller believed he had simply defended himself against Aiken and was justified in his reaction.

Additionally, to the extent it is pertinent, Respondent states on a few occasions that Ernest Aiken, Sr., Ernest Aiken, Jr.'s father, told his son to "stay away from the gang to which Miller belonged." (Resp't. Return 6, 50.) Respondent, again, takes certain statements out of context. Mr. Aiken's testimony was as follows:

> Q. Did you know if there was any problems between your son and
> Phillip Miller?
> A. Yeah, I think.
> Q. How long had that gone on?
> A. I think when I talked to Junior and told Junior, you know, stop,
> you know, hanging with him.
> Q. You told Junior to stay away from Phillip Miller?
> A. No, not really Phillip. I mean the gang, you know, who they, uh,
> been traveling, you know, hanging together.

> (App. 121-22.) Mr. Aiken was not referring to an actual "street gang," but a group
> of people that Miller and his son were allegedly associating with. Respondent's
> attempt to insinuate that Miller was a member of a street gang is completely
> unfounded.

(Dkt. No. 22 at 10-12.)

The undersigned recommends concluding that Petitioner has not made a showing of actual innocence. All of the evidence cited by Petitioner to support his claim is evidence that was actually presented during Petitioner's trial. (See Dkt. No. 22 at 10-12.)[4] But "a Schlup claim involves evidence the trial jury did not have before it. . . ." House, 547 U.S. at 538; see also Gomez v. Jaimet, 350 F.3d 673, 680 (7th Cir. 2003) ("We agree with the Eighth Circuit that merely putting a different spin on evidence that was presented to the jury does not satisfy the Schlup requirements, . . . but if a petitioner comes forth with evidence that was genuinely not presented to the trier of fact then no bar exists to the habeas court evaluating whether the evidence is strong enough to establish the petitioner's actual innocence." (citing Bannister v. Delo, 100 F.3d 610, 618 (8th Cir. 1996)); Cavanagh v. LaManna, Civ. A. No. 3:05-cv-2842-RBH, 2007 WL 895473, at *2 (D.S.C. Mar. 21, 2007). Based on the foregoing, Petitioner's assertion of actual innocence does not "serve[] as a gateway through which

---

[4]The undersigned notes that "[t]he circuit courts are split on whether 'new' includes only 'newly discovered' evidence–evidence that was not *available* at the time of trial–or more broadly encompasses 'newly presented' evidence–all evidence that was not *presented to the jury* during trial." Lopez v. Miller, 915 F. Supp. 2d 373, 400 n.16 (E.D.N.Y. 2013) (citing cases); see also Dick v. Muse, Civ. A. No. 3:10CV505, 2014 WL 4854689, at *2 & n.3 (E.D. Va. Sept. 29, 2014). The District Court need not determine the proper meaning because in the case *sub judice*, the difference is immaterial, as the evidence upon which Petitioner relies was in fact presented at his trial.

[Petitioner] may pass" to bring the instant untimely habeas petition. See McQuiggin, 133 S. Ct. at 1928.

**II**.    **Merits**

Although the undersigned recommends concluding that the instant petition is barred by the statute of limitations, in the alternative, the undersigned recommends concluding that Petitioner is not entitled to relief for the following reasons.

**A. Ground One**

Petitioner asserts in Ground One that he was "denied his constitutional right to have an impartial jury as a juror failed to disclose his personal and professional relationships with the victim's family and outside knowledge of the case." (Dkt. No. 1.) In support of his ground for relief, Petitioner states,

> A juror had a personal and professional relationship with the victim's family. He was the employer of one of the victim's sisters. She was employed at his establishment at the time the incident occurred. The same juror also had a conversation with Petitioner's ex-girlfriend shortly before being selected as a juror regarding the case. The juror failed to disclose his relationship with the victim's family and did not disclose his outside knowledge of the case during voir dire.

(Dkt. No. 1.)

In his Motion for Summary Judgment, Respondent argues, *inter alia*, that Ground One is procedurally defaulted because "the trial judge's ruling denying relief based upon juror misconduct was not presented to the state court of appeals." (See Dkt. No. 13 at 32-33.) Petitioner asserts Respondent is incorrect because Petitioner presented this argument to the South Carolina Court of Appeals in his *pro se* brief. (Dkt. No. 22 at 6; see also Dkt. No. 22-1.) Although Petitioner's *pro se* filing does contain some references to juror misconduct,[5] Petitioner was

---

[5]In his *pro se* filing, Petitioner asserts that trial counsel was ineffective for "not proving the standard of jury misconduct." (Dkt. No. 22-1 at 1 of 9.) He states,
> Did the court err about malice remarks, stating the intentional concealment of a juror doesn't warrant a new trial?
> . . .

14

represented by counsel on his appeal, and counsel did not raise that issue. The ground is, in fact,

defaulted. See Longworth v. Ozmint, 377 F.3d 437, 447-48 (4th Cir. 2004) (concluding that

certain grounds are "procedurally defaulted as a result of [the petitioner's] failure to raise them in

his petition for certiorari to the South Carolina Supreme Court for review of the State PCR

Court's decision"); see also Miller v. State, 388 S.C. 347, 347, 697 S.E.2d 527, 527 (2010)

("Since there is no right to 'hybrid representation' that is partially *pro se* and partially by counsel,

substantive documents, with the exception of motions to relieve counsel, filed *pro se* by a person

represented by counsel are not to be accepted unless submitted by counsel. Because petitioner

was represented by counsel, the *pro se* motion was not proper, should not have been accepted,

and should not have been ruled upon. The motion was essentially a nullity." (citations omitted)).

Regardless, the merits of the claim do not warrant federal habeas relief. On January 20,

2005, the Honorable A. Victor Rawl held a hearing on Petitioner's motion for a new trial based

upon alleged juror misconduct. (See R. at 339-62.) At this hearing, Petitioner's trial counsel, Mr.

Hood, argued as follows:

> YOUR HONOR, . . . DURING THE VOIR DIRE THERE WAS A JUROR[,] . . .
> JUROR NUMBER 99, WHO BECAME A SEATED MEMBER OF THIS
> PARTICULAR JURY AND SAT THROUGH THE ENTIRE TRIAL, WAS
> PRESENT FOR THE VERDICT AND THE WHOLE NINE YARDS.
>
> IT CAME TO OUR ATTENTION AFTER THE TRIAL WAS OVER THAT
> [JUROR 99] MAY HAVE FAILED TO PROVIDE CERTAIN INFORMATION
> CONCERNING RELATIONSHIPS THAT HE HAD WITH THE VICTIM'S
> FAMILY IN THIS CASE. AND THAT IS THE BASIS, SECOND BASIS OF

---

The court also stated that intentional misconduct by a juror does not warrant a new trial, page 22 line
20 thru 23. This is an error of law when a juror intentionally withholds knowledge of any relationship
to victim or defendant.
. . .
Counsel was ineffective for failing to prove the standard of juror misconduct. . . .
. . .
Appeallate [sic] raises several claims of juror misconduct. Several accounts of misconduct are evident
throughout the transcript of record which appeallate [sic] also forward.
(Dkt. No. 22-1 at 2, 4, 5-6, 7 of 9.)

THIS - OF THIS MOTION. THAT THIS WAS A DISCLOSURE THAT HE SHOULD'VE MADE, THAT HE FAILED TO MAKE.

HAD HE MADE THIS DISCLOSURE HE WOULD NOT HAVE BEEN SEATED IN THIS PARTICULAR CASE AND I WOULD HAVE CHALLENGED THIS INDIVIDUAL.

I HAD TEN CHALLENGES, OBVIOUSLY, IN THIS CASE. I WENT BACK THROUGH THE RECORDS AND I ONLY USED SEVEN OF THOSE TEN CHALLENGES.

I SPECIFICALLY - I WENT THROUGH THE JURY LIST AS THE NAMES WERE BEING CALLED. I TRIED TO MAKE ABSOLUTELY SURE THAT NO ONE WAS ON THAT JURY WHO HAD AN ADDRESS THAT WAS LOCATED ANYWHERE CLOSE TO SAINT HELENA ISLAND, WHERE THE INCIDENT OCCURRED AT.

[JUROR 99]'S ADDRESS WAS LISTED AS PORT ROYAL. HE GAVE HIS EMPLOYMENT AS A CONVENIENCE STORE MANAGER. THERE WAS NEVER ANY MENTION OF THE FACT THAT HIS PLACE OF BUSINESS WAS ACTUALLY ON SAINT HELENA ISLAND.

AT THE TIME THE QUESTIONS - ONE OF THE GENERAL QUESTIONS . . . ASKED BY THE COURT ITSELF WAS RELATIONSHIPS WITH ANY OF THE FAMILY MEMBERS, [DID JURORS] HAVE ANY KNOWLEDGE OF THE CASE AND THINGS OF THAT NATURE. AND DURING THAT TIME [JUROR 99] DID NOT RESPOND AND HE DIDN'T PROVIDE ANY INFORMATION.

IT CAME TO OUR ATTENTION THAT THERE WERE AT LEAST TWO SISTERS OF THE DECEASED WHO HAD A PERSONAL AND OR PERHAPS AN EMPLOYEE[-]EMPLOYER RELATIONSHIP WITH [JUROR 99] DURING THE TIME OF THIS EVENT.

AND THE TWO SISTERS, ONE BY THE NAME OF ANTOINETTE AIKEN (PHON.) AND LORETTA HOLMES AIKEN (PHON.) WERE THE TWO THAT WE ALLEGED IN THE MOTION FOR THE NEW TRIAL AS HAVING THIS RELATIONSHIP WITH [JUROR 99], THE ONE THAT HE FAILED TO DISCLOSE.

I HAD [JUROR 99] PREPARE AN AFFIDAVIT AT YOUR REQUEST. AND I HAVE THAT AFFIDAVIT HERE. I'D LIKE TO PRESENT THAT TO THE COURT FOR THE RECORD, AS PART OF THE RECORD.

(R. at 344-46.)

16

Mr. Hood further argued as follows:

[JUROR 99'S AFFIDAVIT] ALSO CORROBORATES . . . IN SOME REGARD, THE STATEMENT OF CLARESSA WRIGHT . . . . HE SAID THERE WAS A CONVERSATION BETWEEN CLARESSA WRIGHT AND HIMSELF . . . AND HE SAYS AT THE TIME I HAD THE CONVERSATION I WAS A JUROR; I HAD BEEN PICKED. AND MISS WRIGHT SORT OF SEEMS TO INDICATE, WELL, MAYBE THAT OCCURRED THE MORNING OF THE BEGINNING OF THE CASE AND AT THE SAME TIME [JUROR 99] MAY HAVE BEEN GOING TO BECOME A POTENTIAL JUROR IN THE CASE.

BUT AT LEAST THEY CORROBORATE ONE ANOTHER, THAT A CONVERSATION DID TAKE PLACE ABOUT THIS PARTICULAR CASE AND, ONCE AGAIN, [JUROR 99] FAIL[ED] TO BRING THIS TO THE COURT'S ATTENTION. WE HAD QUESTIONS CONCERNING HAVE YOU HEARD ABOUT IT, YOU KNOW ANYTHING ABOUT IT, THINGS OF THAT NATURE, AND, AGAIN, [JUROR 99] FAILED TO MAKE A RESPONSE.

IN MY OPINION, BASED UPON ALL OF THE MATTERS THAT WE HAVE HERE, IT'S APPARENT THAT [JUROR 99] INTENTIONALLY FAILED TO DISCLOSE THE FACT THAT, NUMBER 1, HE HAD A RELATIONSHIP BOTH SOCIALLY AND … AS AN EMPLOYER OF ONE OF THE VICTIM'S SISTERS IN THIS CASE AND THAT HE KNEW OF AND OR HAD SOME ACQUAINTANCE WITH THE OTHER SISTERS OF THE VICTIM IN THIS CASE. AND TO ME, I JUST FIND THAT IT'S IMPOSSIBLE THAT HE COULD HAVE NOT INTENTIONALLY FAILED TO DISCLOSE.

SAINT HELENA NOT A BIG PLACE. THERE'RE [SIC] VERY FEW GAS STATIONS ON SAINT HELENA. AND SO I WOULD THINK THAT JUST BASED ON ALL THE CIRCUMSTANCES AND CORROBORATION OF ONE STATEMENT WITH THE OTHER STATEMENT THAT [JUROR 99] SIMPLY DID NOT DISCLOSE WHAT HE SHOULD HAVE DISCLOSED.

IF HE HAD DISCLOSED IT HE WOULD NOT HAVE BEEN SEATED AS A JUROR.

(R. at 350-51.)

The solicitor argued against the Petitioner's motion, asserting that there was "no evidence . . . of any prejudice to the Defendant." (R. at 354.) The trial judge denied Petitioner's motion, stating, *inter alia*,

[THE] FIRST ISSUE THAT'S BEING RAISED BY [THE] DEFENSE IN THE AFFIDAVITS OF [JUROR 99] AND MS. WRIGHT ARE THAT . . . JUROR [99]

17

INTENTIONALLY CONCEALED ONE OF TWO THINGS. THE DEFENSE MENTIONS BUT DOES NOT HARP UPON THE ISSUE OF HIS WORK LOCATION. I DON'T BELIEVE HIS WORK LOCATION SPECIFICALLY WAS REQUESTED. IF IT WAS IT WOULD HAVE BEEN IN THE GENERAL QUALIFICATIONS OF THE JURY, NOT NECESSARILY VOIR DIRE BY THIS COURT.

THIS COURT DID AND ALWAYS DOES [ASK ON] VOIR DIRE [IN] CRIMINAL CASES . . . IS ANY MEMBER OF THE JURY PANEL RELATED BY BLOOD OR MARRIAGE TO OR HAS ANY CLOSE . . . OR PERSONAL RELATIONSHIPS WITH ANY MEMBER - THE VICTIM, THE DEFENDANT, THE WITNESSES OR THEIR FAMILIES. I ASKED THAT QUESTION. I KNOW I ASKED THAT QUESTION IN THIS PARTICULAR CASE.

I DON'T RECALL [JUROR 99] STANDING UP AND SAYING ANYTHING. HE DOES, HOWEVER, STATE IN HIS AFFIDAVIT THAT HE WAS NOT AWARE OF THE FACT THAT THE TWO LADIES REFERRED TO . . . WAS RELATED TO THE VICTIM.

(R. at 358.) With respect to Loretta Holmes Aiken and Antoinette Aiken, the state court judge concluded that the juror did not "fail[] to answer honestly a material question." Conner v. Polk, 407 F.3d 198, 205 (4th Cir. 2005) (quoting McDonough Power Equip. v. Greenwood, 464 U.S. 548, 556 (1984)). The evidence in the record supports such a conclusion; Petitioner is not entitled to federal habeas relief on this claim.

With respect to Claressa Wright, the following exchange occurred during the hearing:

THE COURT: IF, IN FACT, WHICH I FIND DIFFICULT TO BELIEVE THAT [JUROR 99] INTENTIONALLY FAILED TO DISCLOSE THAT INFORMATION, I WOULD FIND IT ALSO INTERESTING THAT HE NOT DISCLOSE ANY RELATIONSHIP WITH CLARESSA WRIGHT, WHO, I UNDERSTAND, ALSO WORKED FOR HIM, DID SHE NOT?

MR HOOD: THAT IS CORRECT, YOUR HONOR.

THE COURT: SO SHE WORKED FOR HIM, TOO?

MR. HOOD: THAT IS CORRECT.

THE COURT: SHE OF COURSE, IS THE GIRLFRIEND OF THE DEFENDANT, CORRECT?

MR. HOOD: WELL, SHE WASN'T AT THAT TIME, YOUR HONOR. THIS WAS A RELATIONSHIP THAT HAD OCCURRED . . . SOME PERIOD

18

BEFORE THIS EVENT OCCURRED. AND . . . SHE WAS AN X-GIRLFRIEND OF THE DEFENDANT IN THIS CASE, CORRECT.

THE COURT: THE SECOND QUESTION THAT PROBABLY WAS NOT RAISED THAT PROBABLY SHOULDVE BEEN RAISED, [IS] WHETHER OR NOT THERE WAS AN INTENTIONAL FAILURE TO DISCLOSE BY [JUROR 99] WHETHER HE KNEW ANYTHING ABOUT THIS CASE, HEARD ANYTHING ABOUT THIS CASE, READ ANYTHING ABOUT THIS CASE THAT WOULD AFFECT HIS ABILITY TO MAKE A DECISION. WELL, OBVIOUSLY HE DOESN'T FEEL THAT WAY BECAUSE HE DIDN'T STAND UP AND SAY ANYTHING ABOUT IT.

. . .

THE ONLY THING THAT'S CLEAR IS WHETHER INTENTIONAL CONCEALMENT INFORMATION IN AND OF ITSELF [IS] SUFFICIENT TO REQUIRE A NEW TRIAL. I DON'T FIND THAT IT IS.

. . .

I NOTE ALSO THAT THERE IS NOTHING IN [JUROR 99]'S AFFIDAVIT THAT INDICATES THAT HAD HE KNOWN OF AIKEN'S RELATIONSHIPS WITH HOLMES, ET CETERA, THAT THAT WOULD HAVE MADE ANY DIFFERENCE IN HIS DELIBERATIONS, THAT HE OBVIOUSLY DID KNOW AT THAT PARTICULAR TIME CLARESSA WRIGHT, WHO WAS HIS EMPLOYEE, WAS, IN FACT, IF NOT THEN, AT LEAST AT SOME POINT IN TIME KNEW MR. MILLER WAS THEN OR [WAS] A[T] SOME PARTICULAR TIME A GIRLFRIEND OF MR. MILLER'S. AND IF THAT DIDN'T AFFECT HIM, I DON'T KNOW WHETHER THE AIKEN RELATIONSHIP, IF KNOWN, COULD AFFECT HIM.

IN ALL SINCERITY, THERE'S NO QUESTION THE STANDARD OF JUROR MISCONDUCT, IN ORDER TO GRANT THE [NEW] TRIAL, THERE MUST BE SHOWN BY DEFENSE, AT LEAST BY THE GREATER WEIGHT OR PREPONDERANCE OF THE EVIDENCE, 1, INTENTIONAL JUROR MISCONDUCT AND, 2, . . . PREJUDICE TO DEFENDANT AS A RESULT THEREOF.

I DON'T FIND THAT. I CAN'T FIND THAT.

(R. at 359-61.)

With respect to Claressa Wright, the undersigned has reviewed the court's voir dire, and as Judge Rawl noted, the only question from voir dire that could be relevant with respect to Ms. Wright is as follows:

19

Ladies and gentlemen, have you read anything about this case, heard anything about this case, formed any impression whatsoever as to the guilt or the innocence of the defendant? If so, please stand and tell me.

(R. at 23.) The judge noted that "obviously" Juror 99 did not feel he knew, heard, or read "anything about th[e] case that would affect his ability to make a decision" because he did not stand up. (R. at 360.)[6] Given the way the voir dire question was phrased, Petitioner has not shown that the state court's rejection of this claim was contrary to, or an unreasonable application of, clearly established federal law, or that the adjudication was based on an unreasonable determination of the facts.

## B. Ground Two

In Ground Two, Petitioner asserts that he is "actually innocent of the offense of murder because the evidence was insufficient to establish that Petitioner committed the offense of murder." (Dkt. No. 1.) Petitioner states,

The alleged witnesses to the shooting all provided inconsistent statements during trial. The evidence presented actually implicated the witnesses in the shooting. Two of the witnesses tested positive for gunshot residue. There was no physical evidence linking Petitioner to the shooting. His fingerprints were not located at the scene and no weapon was found in his possession. Alternatively, there was testimony that Petitioner was assaulted at the time of the shooting warranting a not guilty by self-defense or, at most, a conviction for manslaughter.

(Id.)

Respondent contends such a claim is procedurally barred. (See Dkt. No. 13 at 45.) Petitioner "acknowledges that his appellate counsel failed to raise this issue" but contends the procedural default should be "excused based upon a colorable showing of actual innocence." (Dkt. No. 22 at 10.)

_____

[6]The undersigned notes there was apparently some dispute concerning timing of communication between Juror 99 and Ms. Wright. (See R. at 350.) Juror 99 indicated that the communication occurred after he was selected as a juror, although Ms. Wright seemed to suggest the communication took place slightly earlier. (See id.) If the communication did not take place until *after* Juror 99 became a juror, as Juror 99 indicates, then he did not "fail[] to answer honestly a material question on voir dire," as the contact had not happened at the time of the question. Conner, 407 F.3d at 205. Given that Juror 99 apparently told Ms. Wright that he could not discuss the case, it appears likely that the communication took place after the trial judge instructed the jurors not to discuss the case. (See R. at 352-53, 39-40.)

20

As set forth above, Petitioner's claim of actual innocence does not "serve[] as a gateway through which [Petitioner] may pass" to bring the instant untimely habeas petition. See McQuiggin, 133 S. Ct. at 1928. However, the undersigned will briefly address the merits of Petitioner's claim herein.

Although claims of insufficient evidence are cognizable on collateral review, "a federal court's review of such claims is 'sharply limited.'" Wilson v. Greene, 155 F.3d 396, 405 (4th Cir. 1998). As the Fourth Circuit stated in Wilson,

> Federal review of the sufficiency of the evidence to support a state conviction is not meant to consider anew the jury's guilt determination or to replace the state's system of direct appellate review. Thus, a defendant is entitled to relief only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt.

Wilson, 155 F.3d at 405-06 (internal quotation marks and citations omitted).

Petitioner makes much of the lack of "physical evidence linking [him] to the shooting." It is true that Petitioner's fingerprints were not found at the scene and that the weapon in question was never recovered. Of course, that lack of physical evidence is not dispositive; several witnesses placed him at the scene of the shooting and identified him as the shooter. And, as the prosecutor noted in responding to the Petitioner's motion for a directed verdict, at least one witness indicated the "shooting was unprovoked." (R. at 270; see also R. at 139-46.) Accordingly, Petitioner is not entitled to federal habeas relief on Ground Two. See Bossett v. Walker, 41 F.3d 825, 830 (2d Cir. 1994) ("Although appellants emphasize the lack of physical evidence connecting them to the murder and contend that the testifying witnesses were not credible, a conviction may be based upon circumstantial evidence and inferences based upon the evidence, and the jury is exclusively responsible for determining a witness' credibility." (internal quotation marks and citation omitted); United States v. Gonzalez, 110 F.3d 936, 940-41 (2d Cir. 1997) (where the "government's case is based primarily on eyewitness testimony, . . . any lack of corroboration [with physical evidence] goes only to the weight of the evidence, not to its sufficiency. The weight is a matter for argument to the jury, not a ground for reversal on appeal."

21

(internal quotation marks and citation omitted)); <u>Briscoe v. Buckingham Corr'l Ctr.</u>, Civ. A. No. 00-1080-AM, 2001 WL 34862686, at *14 (E.D. Va. Sept. 27, 2001) ("As several eyewitnesses testified they saw Briscoe shoot Glaize, the lack of physical evidence or the weight of other evidence is irrelevant.").

### **C. Ground Three**

Petitioner asserts in Ground Three that the "trial court erred in failing to charge voluntary manslaughter and self-defense and trial counsel was constitutionally ineffective for failing to request these charges." (Dkt. No. 1.) Petitioner states,

> Two witnesses testified that Petitioner was being assaulted at the time of the shooting. The trial court failed to charge the jury the lesser included offense of voluntary manslaughter because trial counsel requested that the trial court yield to his defensive strategy. Trial counsel improperly advised Petitioner that he should pursue an "all or nothing" strategy despite the testimony of three witnesses that Petitioner was the assailant. Trial counsel failed to request a charge on self-defense for similar reasons.

(<u>Id</u>.) Although raised as one ground for relief, the claims are really separate claims: one of trial court error and one of ineffective assistance of counsel. The undersigned addresses them accordingly.

### 1. Ineffective Assistance of Counsel

Petitioner asserts that counsel was ineffective for failing to request a charge on voluntary manslaughter and a charge on self-defense, "improperly" advising Petitioner "that he should pursue an 'all or nothing' strategy despite the testimony of three witnesses that Petitioner was the assailant." (Dkt. No. 1.)

The United States Supreme Court has said that a meritorious ineffective assistance of counsel claim must show two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687-96 (1984). A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance. <u>Id</u>. at 689. "[A] court must

indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (internal quotation marks and citation omitted); see also Bowie v. Branker, 512 F.3d 112, 119 n.8 (4th Cir. 2008); Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297–99 (4th Cir. 1992); Roach v. Martin, 757 F.2d 1463, 1467 (4th Cir. 1985).  In order to establish the second prong of Strickland, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  A "reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome." Id. While Strickland itself is a deferential standard, when both § 2254(d) and Strickland apply, "review is doubly" deferential. Harrington v. Richter, 562 U.S. 86, 105 (2011). Indeed, when § 2254(d) applies, "[t]he question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 562 U.S. at 105.

The PCR court addressed Petitioner's claim with respect to the voluntary manslaughter charge. (R. at 431-34.) The court first summarized the testimony at the PCR hearing:

> The Applicant testified that counsel advised him not to request a charge on voluntary manslaughter so that it would be "all or nothing" on the murder charge. He asserted that he and counsel did not discuss self-defense. . . . Applicant admitted that he lied to counsel when he told counsel that he was not present at the shooting, but he asserted that he was not the shooter. Applicant admitted that he told the trial judge he did not want a charge on voluntary manslaughter. He testified that he was hoping to put up a defense through cross-examination of the State's witnesses rather than by putting up a defense.
> Trial counsel testified that there were several eyewitnesses, including the other two people in the car with Applicant, who testified that Applicant was in the back seat of the car and was the only person in the back seat. Counsel testified that Applicant told him he was not in the car that day, but Applicant could not provide an alibi witness. Counsel asserted that the only defense available was to argue that there was no physical evidence to link Applicant to the murder so they tried to shift the blame to the driver of the car. The driver of the car tested positive for gun shot residue (GSR), although a SLED agent testified that GSR on the driver was consistent with being near a gun that was fired. Counsel asserted it was Applicant's decision to oppose a jury charge on voluntary manslaughter. He

23

asserted that they did not put up a defense because Applicant elected not to testify and last argument was critical in this case. . . .

(R. at 431.)

Turning to the merits of the ineffective assistance claim, the PCR court found that

Petitioner's "testimony was not credible, while also finding that counsel's testimony was

credible." (R. at 433.) The court further stated,

> This Court finds that counsel is a trial practitioner who has extensive experience in the trial of serious offenses. Counsel conferred with the Applicant on numerous occasions. During conferences with the Applicant, counsel discussed the pending charges, the elements of the charges and what the State was required to prove, Applicant's constitutional rights, Applicant's version of the facts, and possible defenses or lack thereof.
>      Regarding the Applicant's claims of ineffective assistance of counsel, this Court finds the Applicant has failed to meet his burden of proof. . . .
>      This Court finds that it was Applicant's decision to oppose a jury charge on voluntary manslaughter. Counsel properly informed Applicant of the benefits and consequences of such a charge and the possible sentencing ranges for murder and voluntary manslaughter, and Applicant elected to take an "all or nothing" approach to the murder charge.
> . . .
>      This Court finds that counsel was not ineffective for failing to present a defense. Applicant told counsel that he was at home during the incident rather than in the car at the scene of the crime. However, Applicant could not demonstrate a sufficient alibi, and he admitted at the PCR hearing that he was, in fact, in the car at the scene of the murder. Counsel could not argue self-defense, voluntary manslaughter, or alibi based on the information he received from the Applicant prior to trial. This Court finds that counsel effectively cross-examined the State's witnesses, properly suggested an alternative theory for the murder, and made a reasonable trial strategy to preserve last arguments for the defense.
> . . .
>      Accordingly, this Court finds the Applicant has failed to prove the first prong of the Strickland test . . . . This Court also finds the Applicant has failed to prove the second prong of Strickland, specifically that he was prejudiced by counsel's performance.

(R. at 433-34.)

Petitioner is not entitled to federal habeas relief on his claim that counsel was ineffective

in failing to request a charge on voluntary manslaughter. The PCR court found Petitioner's

testimony was not credible and that counsel's testimony was credible. Such factual findings on

24

credibility are "presumed to be correct"; Petitioner has the "burden of rebutting the presumption . . . by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Wilson v. Ozmint, 352 F.3d 847, 858 (4th Cir. 2003). He has not done so. See Wilson, 352 F.3d at 860 ("These facts do not compel the credibility determination reached by the state court, but they certainly provide sufficient basis, for purposes of section 2254(d)(2), to support such a determination.").

Counsel testified at the PCR hearing that Petitioner told counsel he was not at the scene; Petitioner admitted as much at the PCR hearing. Based on that information, counsel pursued the strategy of "trying to pin it on" Enrique Sloan, the driver of the vehicle. (R. at 411.) Counsel noted that the trial judge even put on the record that Petitioner did not want a voluntary manslaughter instruction. (R. at 414; see also R. at 283-86.)

Petitioner has not established that the state court's rejection of this claim of ineffective assistance of counsel is contrary to, or an unreasonable application of, clearly established federal law; nor has Petitioner established that the adjudication was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d). Based on the information counsel had, counsel's performance was not constitutionally deficient. See Strickland, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ."); Meyer v. Branker, 506 F.3d 358, 374 (4th Cir. 2007) ("Holding that such a reasoned determination constituted objectively unreasonable performance would be worse than folly: it would essentially require capital defense counsel to present evidence of remorse, even if, in their considered judgment, the evidence would affirmatively hurt their defendant's case. Strickland does not require any such outcome."); Kornahrens v. Evatt, 66 F.3d 1350, 1361 (4th Cir. 1995) ("In Strickland, the Supreme Court made clear that '[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.'" (quoting Strickland, 466 U.S. at 691)); Turk v. White, 116 F.3d 1264, 1266-67 (9th Cir. 1997) (defense counsel was not ineffective for not pursuing a

diminished-capacity defense because it would have conflicted with the primary defense of self-defense); see also Taylor v. Poole, 538 F.Supp.2d 612, 621 (S.D.N.Y. 2008) ("[H]is trial counsel's strategy to cast doubt on the prosecution's case was to argue that Steed had misidentified [the defendant]. Arguing [the defendant's] suggested strategy would have placed him at the scene of the incident, and would have contradicted trial counsel's chosen strategy. Thus, any challenge raised by appellate counsel to these decisions by trial counsel would have been futile."). In light of the foregoing, the undersigned therefore recommends granting summary judgment to Respondent on the claim that counsel was ineffective for failing to request a voluntary manslaughter instruction.[7]

### 2. Trial Court Error

To the extent Petitioner asserts the trial court's jury instructions were incorrect as a matter of state law, Petitioner is not entitled to relief herein. See 28 U.S.C. § 2254(a); see also Smith v. Moore, 137 F.3d 808, 821-22 (4th Cir. 1998) (refusing to entertain the habeas petitioner's contention that a jury instruction misstated South Carolina law).

To the extent Petitioner asserts his due process rights were violated when the trial court failed to charge voluntary manslaughter and self-defense, Respondent asserts such a claim is procedurally defaulted. (Dkt. No. 13 at 57-59.) Petitioner contends that his claim of actual innocence "excuses any alleged procedural default." (Dkt. No. 22 at 13.)

As detailed above, Petitioner's claim of actual innocence does not "serve[] as a gateway through which [Petitioner] may pass" to bring the instant claim. See McQuiggin, 133 S. Ct. at 1928. In any event, Petitioner made the voluntary and knowing choice, with the advice of his

---

[7]It is not clear to the undersigned whether Petitioner's claim of ineffective assistance with respect to a self-defense instruction was presented to, and ruled upon, by the state court. (See R. at 429-36.) Either way, Petitioner is not entitled to habeas relief. Counsel testified at the PCR hearing that he did not pursue a self-defense theory for the same reasons that he did not request a voluntary manslaughter charge. (R. at 415.) Thus, to the extent the claim of ineffective assistance with respect to a self-defense charge is exhausted, Petitioner is not entitled to habeas relief on the claim for the same reasons he is not entitled to habeas relief on the claim that counsel was ineffective for failing to request a voluntary manslaughter instruction.

attorney (based on what his attorney knew at the time), to *object* to a voluntary manslaughter instruction. (See R. at 283-90.) Moreover, it is less than clear that Petitioner had any *federal* right to such an instruction. See Stewart v. Warden of Lieber Corr'l Inst., 701 F. Supp. 2d 785, 792-93 (D.S.C. 2010) (declining to find that due process requires an involuntary manslaughter instruction, noting, *inter alia*, that in the unpublished decision of Robinson v. North Carolina Attorney General, 238 F.3d 414 (4th Cir. 2000) (unpublished table decision), the Fourth Circuit stated that the "Supreme Court has never held that due process requires lesser-included instructions in non-capital state trials"); Talley v. Hageman, 619 F. Supp. 2d 407, 413 (N.D. Ohio 2008) ("[W]eighing heavily against his argument on federal review, is that the Sixth Circuit has held generally in noncapital cases, such as this, the failure to instruct on a lesser included offense is not such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." (internal quotation marks and citations omitted)). Based upon the foregoing, the undersigned recommends granting summary judgment to Respondent as to Ground Three.

### D. Ground Four

Petitioner asserts in Ground Four that the "trial court erred when it charged that the use of a deadly weapon could infer malice, denying Petitioner due process." (Dkt. No. 1.) He complains that the trial court "charged the jury that malice could be inferred from the use of a deadly weapon despite testimony from witnesses that Petitioner was assaulted at the time of the shooting." (Id.)

From a review of Petitioner's filing, it appears he seeks the benefit of the decision in State v. Belcher, 385 S.C. 597, 685 S.E.2d 802 (2009). (See, e.g., Dkt. No. 22 at 17-18.) As noted above, any claim that the jury instructions were erroneous as a matter of state law is not cognizable in the instant federal habeas action. See 28 U.S.C. § 2254(a); see also Smith, 137 F.3d at 821-22 (refusing to entertain the habeas petitioner's contention that a jury instruction misstated

South Carolina law). Additionally, the undersigned notes that Petitioner's direct appeal was over long before <u>Belcher</u> was decided; he is therefore not entitled to federal habeas relief on this ground. <u>See Ward v. Warden of Lieber Corr. Inst.</u>, Civ. A. No. 0:11-3277-RBH-PJG, 2013 WL 1187133, at *18 (D.S.C. Feb.15, 2003), adopted at 2013 WL 1187112 (D.S.C. Mar. 20, 2013) (finding that <u>Belcher</u> was not applicable because it was decided after the petitioner's direct appeal was final); <u>Horton v. Warden, Kirkland Corr. Inst</u>., Civ. A. No. 9:12-2668-CMC-BHH, 2013 WL 57703, at *1 n.1 (D.S.C. Jan. 4, 2013) (discussing <u>Belcher</u> and finding "[t]he determination of when a change in state law becomes effective is purely a state law issue"); <u>Brown v. Cartledge</u>, Civ. A. No. 1:12-139-TLW-SVH, 2012 WL 4712019, at *10 (D.S.C. Aug. 23, 2012), adopted at 2012 WL 4761433 (D.S.C. Oct. 3, 2012) ("Because Petitioner's conviction was affirmed in 2005 and he was on appeal from denial of PCR when <u>Belcher</u> was decided, the change in law did not apply to his case, and the jury charge was appropriate when given.").

### E. Ground Five

In Ground Five, Petitioner asserts he was "denied due process due to the prejudicial statements of trial counsel during closing statements." (Dkt. No. 1.) Petitioner states,

> There was no physical evidence implicating Petitioner. Petitioner's fingerprints were not located in the vehicle. Trial counsel stated during closing arguments that his fingerprints may not have been located at the scene because he was wearing gloves at the time of the incident.

(<u>Id</u>.)

To the extent Ground Five is a claim of ineffective assistance of counsel, that claim was addressed by the PCR court. The PCR court noted Petitioner's testimony that "counsel erred when he suggested during closing arguments that Applicant must have been wearing gloves because his fingerprints were not in the car." (R. at 431.) The PCR court also noted counsel's testimony "that his comment during closing argument about Applicant wearing gloves was meant to discredit the witnesses and point out that Applicant's fingerprints were not in the car." (<u>Id</u>.)

In rejecting Petitioner's claim, the PCR court found counsel's testimony credible and Petitioner's testimony not credible. (R. at 433.) The court further stated,

> This Court . . . finds nothing improper about counsel's closing argument. Counsel testified that he made a reference that the Applicant must have been wearing gloves for the purpose of discrediting the witnesses and pointing out that Applicant's fingerprints were not found in the car. This Court finds no deficiency in counsel's strategy with respect to closing argument.

(R. at 434.) The PCR court found that Petitioner had not proven that counsel "failed to render reasonably effective assistance under prevailing professional norms" or that Petitioner "was prejudiced by counsel's performance." (Id.)

During closing argument, counsel stated, *inter alia*,

> Mr. Sloan and Mr. Byas both had gunpowder residue on their hands. Well, that's another little minor thing, you know, because they were in the car. Well, look back and think about what the officer testified to who took the gunpowder residue from the car. Where did he go to? He didn't go in the front seat at all. All he did was go in the back seat.
>
> The expert, she testified she didn't know where the gun was fired from. It could have been fired from the front seat, if that was the gun that actually did the killing. Again, we don't have the gun.
>
> This thing happened back in April 2003. This is 2004. They had fingerprints all this time. They had Mr. Miller's prints. They had Sloan's prints. They had all these peoples' prints. But yet nothing.
>
> So Mr. Miller, if he's back there, didn't leave any fingerprints. Maybe he was wearing gloves. Think about what the officer finds when he starts to do the paraffin tests or gunshot residue test on Mr. Sloan.
>
> Oh, wait a minute. I fired a gun today. I fired a gun today. Just think about it. If a person who has been shot and killed by a weapon, you aren't looking for gunpowder residue on the hands of these people because you don't suspect them of a crime. You suspect them of a crime or else you wouldn't be doing this to their hands.
>
> Shooting a gun earlier. Boom. Is there a search warrant for the house of Sloan? No. Is there a search warrant for the house of Byas? No. Phillip Miller, they know, because if they were told about that particular night, Phillip Miller lives in the area. Did anybody go to Phillip Miller's house? No.

> Mr. Jaques, Mr. Jaques, as [the prosecutor] says, you have to take him as
> he is because that's the only way you can get him. Did anybody ever go and try to
> retrieve that weapon to see if that's the weapon that did the killing? No.
>
> . . . Because it's absolutely no evidence, no physical evidence to corroborate
> anything that any of those people have said. Absolutely nothing.

(R. at 308-09.) Shortly thereafter, counsel pointed out that approximately one to two weeks

before trial, the State had tried once more to find a fingerprint match to Petitioner. (R. at 310; see

also R. at 245-46.) Counsel stated,

> Now the State wants you to take what they have done. [The prosecutor] says, well,
> you know I'm stuck with this. I have some prints of Phillip Miller from last week,
> week and a half ago. We gave them to them. They tried to match him to some
> other prints. Negative, not Phillip Miller's.
>
> Right up to the last second they're trying to find some piece of physical evidence
> that would put Phillip Miller in the automobile at the scene of the crime. . . .

(R. at 310.)

The state court's rejection of this claim does not warrant federal habeas relief. At the PCR

hearing, counsel testified as follows:

> A. All of these people were saying that Phillip Miller was in the back seat of the
> car.
>
> Q. But the only one who even mentioned that about a defendant possibly wearing
> gloves was you.
>
> A. Well, maybe I did. I don't know. Maybe I did make that comment, but again, it
> was just to discredit the witnesses. Nobody had testified that he was wearing
> gloves, you know, at the time. So why aren't his fingerprints in the car if they
> allege that he's in the car, I mean, he must have touched the car at come point in
> the course of this thing, and they couldn't find Phillip Miller's fingerprints in the
> car. But nobody had testified that Phillip Miller was sitting in the backseat of the
> car wearing gloves, so without the gloves, you know, there was no other option
> other than the fact that he wasn't there.
>
> Q. I heard that he was wearing gloves like O.J.
>
> A. Nobody testified to that kind of stuff and if I recall correctly, it was during the
> summer; if I remember correctly. . . .

(R. at 399-400.)

Counsel testified as to a strategic reason for mentioning that "[m]aybe [Petitioner] was wearing gloves": to highlight that, given no one testified Petitioner was wearing gloves, Petitioner simply was not in the back seat of that car. Petitioner is not entitled to federal habeas relief on this claim of ineffective assistance of counsel. See Harrington, 562 U.S. at 101 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting Yarborough, 541 U.S. at 652)); Strickland, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ."); McCarver v. Lee, 221 F.3d 583, 594 (4th Cir. 2000) ("In evaluating trial counsel's performance, [the court] must be highly deferential to counsel's strategic decisions and not allow hindsight to influence our assessment of counsel's performance."). Respondent is entitled to summary judgment as to Ground Five.

## CONCLUSION

It is RECOMMENDED, for the foregoing reasons, that Respondent's Motion for Summary Judgment (Dkt. No. 14) be GRANTED; and the Petitioner's habeas petition be DISMISSED WITH PREJUDICE. It is further RECOMMENDED that a certificate of appealability be denied.[8]

IT IS SO RECOMMENDED.

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

August 3, 2015
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

---

[8]    Title 28, Section 2253 provides in relevant part,

(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
(B) the final order in a proceeding under section 2255.

28 U.S.C. § 2253. A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. See Miller-El v. Cockrell, 537 U.S. 322, 336 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683 (4th Cir. 2001). In the case *sub judice*, the legal standard for a certificate of appealability has not been met. The undersigned therefore recommends that a certificate of appealability be denied.

32

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).